IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| APRIL LAYTON, as Personal Representative of the Estate of Charles Holdstock, deceased; APRIL LAYTON, Individually; VALERIE WINFREY, Individually; and MELANIE HUFNAGEL, Individually, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case Number CIV-09-1208-C |
| CORRECTIONAL HEALTHCARE MANAGEMENT OF OKLAHOMA, INC.; THE BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY; a Political Subdivision of the State of Oklahoma; and JOHN WHETSEL, individually and in his capacity as Sheriff of Oklahoma County, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs filed the present action pursuant to 42 U.S.C. § 1983 and Oklahoma tort law following the death of Charles Holdstock ("Holdstock" or "decedent") while he was held as a pretrial detainee in the Oklahoma County Jail. Plaintiffs allege that while in custody at the Oklahoma County Jail, Mr. Holdstock suffered a series of health events which ultimately led to his death. Plaintiffs allege that Defendants violated Mr. Holdstock's constitutional rights and acted in violation of Oklahoma tort law in relation to their custody of Mr. Holdstock. Defendant Correctional Healthcare Management of Oklahoma, Inc. ("CHMO"), Sheriff John Whetsel in his official capacity as Sheriff of Oklahoma County, and Defendant Board of

County Commissioners of Oklahoma County ("BOCC"), and John Whetsel individually ("Whetsel"), each filed Motions for Summary Judgment, arguing the undisputed facts demonstrate that Plaintiffs' claims cannot survive.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144

F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## **DISCUSSION**

The following facts are undisputed: Decedent Charles Holdstock was booked into the Oklahoma County jail on September 5, 2006. At that time, he had numerous preexisting medical conditions, including diabetes mellitus, congestive heart failure, hypertension, elevated cholesterol, and arthritis. Further, Mr. Holdstock had had a pacemaker installed in 2002. One of the medications decedent was prescribed to treat his health conditions was Digoxin. At high levels, Digoxin becomes toxic and prevents the heart from properly functioning. Digoxin is filtered through the kidneys and if the kidneys are not functioning properly, Digoxin can build up to toxic levels in the bloodstream.

On April 28, 2009, while incarcerated in the Oklahoma County jail, decedent was found cool, clammy, and non-responsive in his jail cell. Decedent was taken to the infirmary run by CHMO and evaluated and treated. Decedent was later returned to his cell. On April 29, decedent was again found in his cell with labored respiration and unable to explain what his problems were. He was again taken to CHMO's infirmary where blood was drawn and other tests were done. After his condition stabilized, Holdstock was returned to his cell. The blood work taken on April 29 was processed by LabCorp and a report was returned to CHMO on May 1, 2009. That lab work showed that decedent's white blood count was in the high range. His neutrophils were in the high range, his glucose serum was high, his BUN

3

count was high, his creatinine serum was high, and his potassium serum was high. Despite these tests, the evidence before the Court demonstrates that the medical personnel employed by CHMO undertook no action to address the high results. Plaintiffs' medical expert has testified that these blood results should have been recognized by CHMO's medical professionals as demonstrating kidney or renal failure and prompted them to take further action to correct this problem. Plaintiffs' medical expert further testified that the failure to correct the situation timely ultimately contributed to decedent's death. The question presented is whether CHMO's failure to act is actionable under the Constitution and/or Oklahoma tort law, and if so, against which Defendants. The Court will address the constitutional claim first.

Because Mr. Holdstock was a pretrial detainee, Plaintiffs' constitutional claims are evaluated under the Fourteenth Amendment's Due Process Clause which applies the protections of the Eighth Amendment to persons in his position. Garcia v. Salt Lake County, 768 F.2d 303, 307 (10th Cir. 1985) ("pretrial detainees are . . . entitled to the degree of protection against denial of medical attention which applies to convicted inmates"). In order to state a valid Eighth Amendment claim, Plaintiffs must show deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). The test for deliberate indifference has both objective and subjective components. Callahan v. Poppell, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component of the test is met if the "harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause" of the Eighth Amendment. Mata v. Saiz, 427 F.3d 745, 752-53 (10th

Cir. 2005) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Here, the harm suffered by decedent, death, is clearly sufficiently serious to meet the objective component necessary to implicate the Eighth Amendment.

The query now turns to the subjective component. "To prevail on the subjective component, the prisoner must show that the defendants 'knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.'" Callahan, 471 F.3d at 1159 (quoting Kikumura v. Osagie, 461 F.3d 1269, 1293 (10th Cir. 2006)). It is on this clause that the differing liability of the various Defendants hinges.

In evaluating the subjective component, the symptoms displayed by the prisoner are relevant to a determination of whether a defendant acted with deliberate indifference. The question to be answered is, "[W]ere the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?" Mata, 427 F.3d at 753. The Supreme Court has set forth the standard as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. So first, the Court must evaluate the actions taken by the various Defendants against the risk of death faced by Mr. Holdstock.

The facts presented by Plaintiffs demonstrate that on April 28, 2009, decedent was found in his cell by jail employees, in a distressed condition. It is clear that the jail officials

took him to the infirmary for evaluation and treatment, if necessary. Once in the infirmary, Defendant CHMO's employees examined decedent, determined that his blood sugar was low, and treated that condition. Once decedent's condition had stabilized, he was released by the medical professionals to return to his cell. Plaintiffs complain that Mr. Holdstock could not be monitored while in his cell and/or that the long history of problems at the jail should have caused BOCC and/or Whetsel to act differently to Mr. Holdstock. However, there simply is no evidence from which any reasonable jury could find that on April 28, 2009, Mr. Holdstock faced death. Thus, it cannot be said that anyone recognized that risk existed and recklessly ignored it.

Essentially the same events repeated on April 29. Mr. Holdstock was found unresponsive in his cell by jail personnel and taken to the infirmary for treatment. Critical to CHMO's potential liability, tests were run on this visit which eventually put those Defendants on notice of the risk faced by Mr. Holdstock. As noted above, CHMO employees received those results on May 1, 2009. Plaintiffs' expert has testified that medical personnel seeing the lab reports should have recognized the impending risk faced by Mr. Holdstock and immediately taken action. However, it was not until May 15, 2009, when decedent was again found in his cell unresponsive, that he was sent to the emergency room. As noted, Mr. Holdstock died on that day.

As these facts demonstrate, in each instance the employees of the BOCC and/or Whetsel took the appropriate action to provide medical care for decedent by taking him to the infirmary. While Plaintiffs argue that policies should have been in place to require

different action, they fail to offer any evidence to show any other policy, procedure, or custom would have advised the BOCC/Whetsel employees of the risk faced by Mr. Holdstock. Simply put, there is no evidence from which a reasonable jury could find that any of the jail employees responding to decedent's condition were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed or that those officials in fact made that inference. Consequently, the undisputed material facts demonstrate that Defendants BOCC and John Whetsel individually were not deliberately indifferent to the medical condition of decedent. Accordingly, those Defendants' Motions for Summary Judgment will be granted.

While Defendants make much of the fact that Plaintiffs' medical expert testified he was not a "standard of care" expert, and therefore can't testify that CHMO employees failed to properly care for Mr. Holdstock, the fact remains that his testimony, when viewed in the light most favorable to Plaintiffs, is sufficient for a reasonable jury to find that medical providers in the position of CHMO's employees would have been aware of the risk to decedent, and that they recklessly chose to disregard that risk. For these reasons, CHMO's Motion for Summary Judgment will be denied.

Turning to the state law claims: CHMO argues that Plaintiffs cannot establish a claim of medical negligence because they have no expert testimony. To the contrary, the same facts and testimony which demonstrate that CHMO's employees acted with deliberate indifference are sufficient to satisfy the elements of a medical negligence claim under Oklahoma law. Thus, to the extent CHMO seeks summary judgment on that claim, it will

likewise be denied. Whether or not CHMO is entitled to the protections of Oklahoma's Governmental Tort Claims Act and its exception to the waiver of sovereign liability was not raised by this Defendant and therefore has not been considered by the Court.

## **CONCLUSION**

For the reasons set forth herein, Defendants Sheriff John Whetsel, in his official capacity as Sheriff of Oklahoma County, and Defendant Board of County Commissioners of Oklahoma County Motion for Summary Judgment (Dkt. No. 63) and the Motion of Defendant, John Whetsel, Individually for Summary Judgment (Dkt. No. 71) are GRANTED. Defendant Correctional Healthcare Management of Oklahoma, Inc.'s Motion for Summary Judgment (Dkt. No. 64) is DENIED. A separate judgment will issue at the close of the case.

IT IS SO ORDERED this 22nd day of July, 2011.

_____
ROBIN J. CAUTHRON
United States District Judge