NO. CIV-09-1208

## IN THE UNITED STATES DISTRICT COURT

APRIL LAYTON, as personal representative of the Estate of CHARLES HOLDSTOCK, deceased, et al,

Plaintiffs,

v.

CORRECTIONAL HEALTHCARE MANAGEMENT OF OKLAHOMA, INC., a corporation, THE BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY, a political subdivision of the State of Oklahoma, and JOHN WHETSEL, individually and in his capacity as Sheriff of Oklahoma County,

Defendants,

## TRIAL BRIEF OF DEFENDANTS BOCC AND SHERIFF JOHN WHETSEL IN HIS OFFICIAL CAPACITY

LISA ERICKSON ENDRES, OBA # 16647

Assistant District Attorney
Oklahoma County District Attorney's Office
320 Robert S. Kerr, Suite 606
Oklahoma City, OK 73102
(405) 713-1662 Phone
(405) 713-1749 Fax

Attorney for Board of County Commissioners of Oklahoma County
and John Whetsel

## TABLE OF CONTENTS

PROCEDURAL BACKGROUND ........................................................................ 2

PROPOSITION I:
    Plaintiffs are entitled to one recovery for the single injury to
    Charles Holdstock ................................................................................... 5

PROPOSITION II:
    Dismissal of all claims against the Defendants BOCC and Sheriff
    Whetsel is quired to prevent double recovery due to the settlement
    that compensated plaintiff on all injury and claims .............................. 8

PROPOSITION III:
    Dismissal of all claims against the Defendants BOCC and Sheriff
    Whetsel is quired to prevent double recovery due to the fact
    CHMO was the equivalent state actor for the purposes of all Section
    1983 claims ......................................................................................... 14

PROPOSITION IV:
    Alternatively, the Defendants are entitled to setoff or credit of the
    $225,000.00 settlement from CHMO ................................................... 20

PROPOSITION V:
    For the purposes of liability and assessment of damages, the Defendants
    Whetsel and BOCC should be treated as one entity for the purposes
    of liability and damages. ..................................................................... 27

CONCLUSION ........................................................................................... 28

CERTIFICATE OF SERVICE ...................................................................... 29

# TABLE OF AUTHORITIES

## Case Law

*Barrie v. Grand County*
   119 F.3d 862, 867 (10th Cir. 1997)................................................................... 15

*Bucker v. Toro*
   116 F.3d 450, 452 (11th Cir. 1997).................................................................. 14

*Capshaw v. Gulf Ins. Co.*
   2005 OK 5, 107 P.3d 595.........................................................................24,25

*Carey v. Piphus*
   435 U.S. 247, 98 S.Ct. 1042 (1978)................................................. 6,7,8,22,26

*Cartel Capital Corp. v. Fireco of New Jersey*
   81 N.J. 548, 410 A.2d 674, 684 (1980)............................................................23

*City Los Angeles v. Heller*
   475 U.S. 796, 799 (1986) ................................................................................ 19

*Clappier v. Flynn*
   605 F.2d 519, 529 (10th Cir. 1979)................................................................ 5,7

*Cleere v. United Parcel Service, Inc.*
   1983 OK CIV APP 29, 699 P.2d 785 ...............................................................24

*Dubbs v. Head Start, Inc.*
   336 F.3d 1194, 1216 (10th Cir. 2003)............................................................. 14

*Edmondson v. Leesville Concrete Co.,*
   500 U.S. 614, 111 S.Ct. 2077, 2085-87, 114 L.Ed.2d 660 (1991)................... 16

*Estelle v. Gamble*
   429 U.S. 97, 103, 97 S.Ct 285 (1976) .............................................................. 15

*Fleming v. Uphoff*
   2000 WL 374295, at *2 (10th Cir. April 12, 2000) .......................................... 15

*Fox v. Barnes*
   2013 WL 2111816, 2* (N.D. Ill. May 15, 2013) ............................................. 21

*Fresques v. Minks*
    2013 WL 452292, *8 (Dist. Colo. Feb. 6, 2013) ............................................ 19

*Gallagher v. Neil Young Freedom Concert*
    49 F.3d 1442, 1456 (10th Cir. 1995) .................................................. 16

*Grand County*
    119 F.3d 862, 867 (10th Cir.1997) ..................................................... 16

*In re Doctors Hosp. of Hyde Park, Inc.,*
    494 B.R. 344, 371-372 (Bankr. N.D.I11.2013) ........................................... 5,10

*In re Jones*
    804 F.2d 1133, 1139-1140 (10th Cir. 1986) ...................................................... 23

*Jacobs v. Pennsylvania Dept. of Corrections*
    2011 WL 2295095 18 (West.D.Pa. June 7, 2011 ....................................... 5

*Jett v. Dallas Independent School Dstrict*
    491 U.S. 701, 737-738, 109 S.Ct 2702, 2727 (U.S. Tex., 1989) ..................... 18

*Jiron v. City of Lakewood*
    392 F.3d 410, 419 (10th Cir. 2004) ................................................... 19

*J.M. v. Hilldale Independent School District No. I-29 of Muskogee Cnty, Okla.*
    *1-2 (E.D.Okla. October 3, 2008) ..................................................... 6

*Key v. McLaughlin*
    2011 WL 4369115, *8-9 (Dist. Colo, Aug. 3, 2011) ....................................... 20

*Kirkpatrick v. Chrysler Corp.*
    920 P.2d 122 (Okla. 1996) ..................................................... 10,11

*Layton v. Board of Cnty County Com'rs of Oklahoma County*
    512 Fed. Appx. 861, 867-68 (10th Cir. 2013) ................................................ 27

*Lopez v. LeMaster*
    172 F.3d 756, 762 (10th Cir. 1999) ................................................ 27

*Lugar v. Edmondson Oil Co.,*
    457 U.S., 922, 937, 102 S.Ct., 2744, 2754 (1982 ............................................. 14

*Mac Adjustment, Inc. v. Prop. Loss Research Bureau*
    1979 OK 41, 595 P.2d 427 .......................................................................... 13

*Mandel v. Doe*
    888 F.2d 783 (11th Cir. 1989) ................................................................. 17

*Martinez v. Winner*
    771 F.2d 424, 444 (10th Cir. 1985) ......................................................... 27

*Mason v. Okla. Tpk. Auth.,*
    115 F.3d 1442, 1459 (10th Cir. 1997) ..................................................... 6,7

*Meade v. Grubbs*
    841 F.2d 1512, 1517 (10th Cir. 1988) ..................................................... 27

*Mitran v. County of Dupage*
    946 F.2d 897, 1991 WL 209656 at *4 (7th Cir. 1991) .............................. 17

*Morava v. Central Oklahoma Medical Group, Inc.*
    26 P.3d 779, 781-782 (Okla. Civ.App. 2001) ............................................ 22

*Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*
    532 F.3d 1063, 1079 (10th Cir. 2008) ...................................................... 6

*Moss v. City of Oklahoma City*
    897 P.2d 280 (Okla.1995) .......................................................................... 10

*Myers v. Okla. Cnty. Bd. Of Cnty. Comm'rs*
    151 F.3d 1313, 1316 n. 2 (10th Cir.1998) ............................................... 27

*National Union Fire Ins. Co. v.A.A.R. Western Skyways, Inc.,*
    1989 OK 157, 784 P.2d 52 .......................................................................... 22

*Nelson v. ARA Food Serv.,*
    1995 WL 303990, at *3 n. 9 (E.D.Pa. May 18, 1995) ................................. 16,17

*Nichols v. Mid-Continent Pipe Line Co.*
    1996 OK 118, 933 P.2d 272 ....................................................................... 24,25

*O'Bryan v. Sedgwick County*
    2000 WL 882516, *6-8 (D. Kan. June 12, 2000) ........................................ 16,18

*Olsen v. Layton Hills Mall*
    312 F.3d 1304, 1317-18 (10th Cir. 2002) ........................................................ 19

*Pain v. Sims*
    283 P.3d 343, 345-346 (Okla. Civ. App. 2012) ............................................... 21

*Price v. Southwestern Bell Telephone Co.,*
    1991 OK 50, ¶15, 812 P.2d 1355, 1359 ........................................................... 21

*Price v. Suarez*
    2011 WL 635225, *3-4 (D. Utah Feb. 11, 2011)............................................. 16

*Quezada v. County of Bernalillo*
    944 F.2d 710 (10th Cir. 1991)........................................................................... 21

*Ramos v. Lamm*
    639 F.2d 559, 570-71 (10th Cir. 1980) ........................................................... 16

*Reed v. Hamby*
    124 F.3d 217, 1997 WL 537909, *6 (10th Cir. Sept. 2, 1997) ........................ 27

*Rio Grande Gas Co. v. Stahmann Farms, Inc.,*
    80 N.M. 432, 457 P.2d 364, 366 (1969) ......................................................... 23

*Sanchez v. City of Espanola*
    94 N.M. 676, 615 P.2d 993, 995 (1980) ......................................................... 23

*Stringer v. Dilger*
    313 F.2d 536, 541 (10th Cir. 1963)............................................................. 5,24

*Cf. Taylor v. Vicky*
    337 Fed. Appx. 412, at *3 (5th Cir. 2009) ...................................................... 19

*Town of Cicero, Ill*
    653 F.3d 632, 640 (7th Cir. 2011)...................................................................... 7

*United States v. Classic*
    313 U.S., 326, 61 S.Ct., 1031, 1043............................................................... 14

*Wall v. Dauphin*
    167 Fed. Appx. 309, at *2 (3rd Cir. 2006) ...................................................... 20

*Watts v. Laurent*
    744 F.2d 168, 179 (7th Cir. 1985)............................................................. 6,7,8,21

*West v. Atkins*
    487 U.S. 42, 56, 108 S.Ct. 2250 (1988) ......................................................... 15

*Wilspec Technologies, Inc. v. DunAn Holding Group, Co., Ltd.*
    204 P.3d 69, 72-73 (Okla. 2009)....................................................................... 13

## Statutes and Rules

U.S.C.
    42 § 1988 ..........................................................................................................22

Fed. R. Civ. P.: ..........................................................................................................27

Okla. Const. art. 17 § 2................................................................................................7

Okl. Stat.:
    12 § 832(A) ......................................................................................................22
    12 § 832(H) ...............................................................................4,7,10,14,21,23,24,25
    23 § 9.1 ..............................................................................................................13

## Other Authorities

22 Am.Jur.2d Damages  § 28 .............................................................................5
Sheldon H. Nahmod, Civil Rights and Civil Liberties Litigation, The Law of
Section 1983 § 4:15 at 4-68 (4th ed.2010) ...........................................................5
Restatement (Second) of Torts........................................................................12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

APRIL LAYTON, as personal representative )
of the Estate of CHARLES HOLDSTOCK, )
deceased, et al, )
                                           )
                   Plaintiffs, )
                                           )
v. )          Case No.:     CIV-09-1208-C
                                           )
CORRECTIONAL HEALTHCARE )
MANAGEMENT OF OKLAHOMA, INC., )
a corporation, THE BOARD OF COUNTY )
COMMISSIONERS OF OKLAHOMA )
COUNTY, a political subdivision of the )
State of Oklahoma, and JOHN WHETSEL, )
individually and in his capacity as Sheriff of )
Oklahoma County, )
                                           )
                 Defendants. )

## TRIAL BRIEF OF DEFENDANTS BOCC AND
## SHERIFF JOHN WHETSTEL IN HIS OFFICIAL CAPACITY

COMES NOW, the Defendants, Board of Oklahoma County Commissioners (BOCC) and Sheriff John Whetsel, in his official capacity, and presents the following Trial Brief on legal issues for the Court's consideration prior to jury trial on the merits which effect the standing of Plaintiff's remaining claims for trial and alternatively, the named parties who may be still subject to suit and liable as well as the right of Defendant to setoff with regard to a previously negotiated settlement agreement between the Plaintiffs and the dismissed co-defendant, CHMO.

## PROCEDURAL HISTORY OF THE CASE

On July 22, 2011, this Court granted the Defendants' initial motion for summary judgment on all claims, including the Section 1983 claim and all state tort claims. [Doc.#91, Order Granting Summary Judgment].  Plaintiffs timely appealed this ruling on August 25, 2011 [Doc.#111, Notice of Appeal].

On August 4, 2011, the remaining Defendant in this case, CHMO, the County's contracted Healthcare Provider, entered into a settlement agreement with the Plaintiffs for the sum of $225,000.00 to release just CHMO for all claims and  all damages relating to the death of Charles Holdstock as asserted by the Plaintiffs in their Petition.   (Ex. 1, Settlement Agreement, p. 2); See also [Doc.#121, Order regarding Settlement].   The settlement occurred before the appeal was filed by Plaintiffs.  Defendants , BOCC and Sheriff Whetsel,  did not attend the settlement conference on August 4, 2001 because they were no longer parties.  Additionally, BOCC and Sheriff Whetsel were not made parties to the negotiations or the Settlement Agreement itself nor made privy to the terms and conditions until parties were required under subpoena to turn the document over in October of 2013.[Order, Doc.#161 ]  The Settlement Agreement signed by Plaintiffs and CHMO specifically excluded the Defendants, BOCC or Sheriff Whetsel from being included in the Release even though the provision of medical care to pre-trial detainees is a non-delegable duty and that CHMO was and is contractually obligated to fully defend and indemnify the Sheriff and the County from damages arising from lawsuit

2

such as this that revolve around the provision of medical care to jail inmates. (Ex. 2, CHMO Contract, p. 15-16).

On March 12, 2013, an Order and Judgment of the United States Court of Appeals was entered reversing this Court's order granting summary judgment on the Section 1983 claim and vacating the order granting summary judgment on the state law claims. [Doc.# 133, Appellate Court Order]. The matter was remanded back for further proceedings against BOCC and Sheriff John Whetsel, in is official capacity. No discovery or further motion deadlines were set by the Court.

However, the Defendants were compelled to file a Partial Motion for Summary Judgment on August 30, 2013 in order to draw the Court's attention to the lack of subject matter jurisdiction over the remanded state tort claims. [Doc.#145]. The Plaintiffs responded to the motion and the Court entered an order dismissing all the state tort claims on October 4, 2013 on the basis of lack of subject matter jurisdiction due to the failure of the Plaintiffs to comply with the jurisdictional requirements of the Oklahoma Governmental Tort Claim Act. [Doc.#164]. This order effectively eliminates the three daughter's individual tort claims from being tried and as a result, should eliminate them from being named Plaintiffs in the litigation and setting at counsel's table as a party at trial.

The case is currently set on the Court's December 3, 2013 trial docket. [Doc.# 167, Trial Docket]. However, the Court has also never had the opportunity to consider the effect of the settlement between the Plaintiffs and CHMO in this case or

3

whether this suit should even be allowed to proceed against the remaining Defendants post- remand due to the CHMO settlement. Additionally, if the Court finds the remaining Defendants are required to go to trial defend this litigation post-settlement, the Court will need to consider the effect of the ghost tortfeasor's settlement on the Section 1983 wrongful death claim and the remaining Defendants right to setoff or credit for the settlement paid by its contracted healthcare provider, CHMO. Part of this consideration would include consideration of the appropriate jury instructions to be given to the jury to effectuate and preserve the Defendants right to setoff in accordance with Oklahoma's Contribution Among Tortfeasors Act, Okla. Stat. Tit. 12 §832(H) (2001).

Further, since remand, the Court also has had no opportunity to consider or rule on the propriety of the Plaintiff's ability to maintain its suit against both the BOCC and the Sheriff, in his official capacity as by law these entities are generally considered to be one legal entity rather than two. Allowing the suit to proceed against both may lead to jury confusion and accidental or unintentional double recovery. Currently the only claims left remaining for trial before the jury are the Estate's Section 1983 claims against BOCC and the Sheriff in his official capacity for municipal liability based upon the theory that the BOCC and Sheriff Whetsel had an established custom or policy that was the moving force behind the deprivation of Charles Holdstock's constitutional right to reasonable medical care for his serious medical conditions and that the policy or custom was moving force behind the constitutional deprivation that

4

proximately cause of his death.  In support of these arguments and contentions, the

Defendants collectively state and represent as follows:

**PROPOSITION I:**     **PLAINTIFFS ARE ENTITLED TO ONE RECOVERY FOR THE SINGLE INJURY TO CHARLES HOLDSTOCK**

"The law abhors duplicative recoveries ..." 22 Am.Jur.2d *Damages* § 28. A plaintiff in

a civil action is not entitled to a windfall, and the law will not put him in a better position

than he would be in had the wrong not been done. *Id.*  "The general bar against double

recovery for the same injury is also applicable to § 1983 cases." SHELDON H. NAHMOD,

CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION, THE LAW OF SECTION 1983, § 4:15 at 4–

68 (4th ed.2010). "[C]ourts are concerned about potential double recovery for general

damages." *Id.* ; *See also Jacobs v. Pennsylvania Dept. of Corrections*, 2011 WL

2295095, at *18 (West.D.Pa. June 7, 2011). Courts have refused to permit a double

recovery even though the basis of the co-obligor's liability was different than the released

party's because it was the single injury to the releasing party that mattered. Once that

injury is remedied, the inquiry is at an end. *In re Doctors Hosp. of Hyde Park, Inc.*, 494

B.R. 344, 371 -372 (Bankr. N.D.Ill. 2013)

It is well settled and recognized in the Tenth Circuit  that Section 1983 provides a civil

remedy in the federal courts but that it is to be read against the background of tort.

*Stringer v. Dilger*, 313 F.2d 536, 541 (10th Cir.1963); *Clappier v. Flynn*, 605 F.2d 519,

529 (10th Cir. 1979).  In Section 1983 litigation, like in common law state tort actions, a

plaintiff is only entitled to recover for the actual loss suffered and no more. *Clappier*,

605 F.2d at 529. In the case of J.*M. v. Hilldale Independent School Dist. No. I-29 of Muskogee County, Okla.* 2008 WL 4511872, at *1 -2 (E.D.Okla. October 3, 2008), the federal court opined that the same constitutional right was at stake in two separately pled Section 1983 claims which resulted in the same injury, and therefore, the damages attributable to this single injury would in fact be duplicative if recovery for that single damage was allowed under the two different Section 1983 theories. *Id. citing Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.,* 532 F.3d 1063, 1079 (10th Cir.2008) *citing Mason v. Okla. Tpk. Auth.,* 115 F.3d 1442, 1459 (10th Cir.1997) (*reversed on other grounds*).

In this case, the Plaintiffs filed their suit against three Defendants: CHMO, the Board of Oklahoma County Commissioners, and Sheriff John Whetsel. Plaintiff's claims were brought under several different theories of recovery ranging from common law wrongful death state tort claims to Section 1983 civil rights constitutional claims for deliberate indifference to Charles Holdstock's serious medical needs. However, the only remaining claim is the Section 1983 claim based on municipal liability for a custom or policy alleged to have violated Holdstock's constitutional rights to access to medical care.

The key to determining compensatory damages in this Section 1983 case is the fact the Plaintiffs have alleged the same deliberate indifferent to medical care claims against all the defendants for the same wrongful death injury to Charles Holdstock. In a Section 1983 suit, where multiple independent actors concurrently or consecutively produce a single injury, each actor is held jointly and severally liable for the entire injury. *Watts v. Laurent,* 744 F.2d 168, 179 (7th Cir. 1985) (*citing Carey v. Piphus,* 435 U.S. 247, 98 S.Ct.

1042 (1978). The fundamental principle when determining damages and recovery in a Section 1983 claim is that the Plaintiffs are entitled to a single recovery per injury regardless of the number of theories of recovery or the number of Defendants whose actions or inactions contributed to that single and indivisible constitutional injury. *Watts,* 744 F.2d at 179-80 (1983 deliberate indifference claim against several state employees was a single indivisible injury because defendants had joint and several liability); *See also Town of Cicero, Ill,* 653 F.3d 632, 640 (7th Cir. 2011)(damages are not assessed by defendant or by claim but for an injury).

In this case, Plaintiffs have asserted only one damage or injury: the wrongful death of Charles Holdstock. There is no evidence of multiple injuries to support multiple recoveries. Therefore, Plaintiffs in this case are entitled to only one recovery for this injury and no more. This prohibition against double recovery is firmly established in Oklahoma case law as well as by statute. See *Mason v. Oklahoma Turnpike Authority,* 115 F.3d 1442, 1459 (10th Cir.1997)(*reversed on other grounds*) (holding double recovery is precluded when alternative theories seeking same relief are pled and tried together); *See also,* Okla. Stat. Tit. 12 §832(H) (2001) (the Oklahoma Contribution Among Tortfeasors Act).

The law clearly states and supports that the purpose of litigation it to make the plaintiff whole for the injury or injuries suffered. *Clappier v. Flynn,* 605 F.2d 519, 529 (10th Cir.1979). It is also clear that in Section 1983 civil rights litigation, the Plaintiff is entitled to a single recovery for a constitutional right violation and no more. *See Carey v. Piphus,* 435 U.S. 247, 255-56, 98 S.Ct. 1042, 1048 (1978). "To the

extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages." *Id.* at 256-257. It is the Court's duty to ensure that the plaintiff be awarded an amount of compensatory damages no greater will fairly and justly compensate the Plaintiff for the injury sustained. *See Id.* In this case, there can be no factual dispute the single injury asserted by the Plaintiffs is the death of Charles Holdstock, which is one injury and that Plaintiffs are asserting multiple theories of recovery against different state actors for that injury. Therefore, Plaintiff is entitled to one recovery for this single injury regardless of the number of theories or defendants they have claims to have contributed to that injury. *See Watts v. Laurent,* 744 F.2d at 180.

**PROPOSITION II:** **DISMISSAL OF ALL CLAIMS AGAINST THE DEFENDANTS BOCC AND SHERIFF WHETSEL IS QUIRED TO PREVENT DOUBLE RECOVERY DUE TO THE SETTLEMENT THAT COMPENSATED PLAINTIFF ON ALL INJURY AND CLAIMS**

Plaintiffs agreed and executed a settlement agreement which by its very terms states that Plaintiffs accepted the payment of the $225,000.00 from CHMO and that the settlement is for all claims and damages. (Ex. 1, Settlement Agreement, p. 2, Section A(5)). This settlement agreement also specifically states that it in no way constitutes a release of other defendants in the case of CIV-09-1208-C. (Ex. 1, Settlement Agreement, p.4). However, even though the release of liability clause specifically excludes BOCC and Sheriff Whetsel and only releases the contracted medical healthcare provider, CHMO, this contract clause cannot and does not change the fact the parties agreed in the

settlement document that the $225,000.00 settlement received was for "any injury to the Plaintiffs and any damages claimed" and in fact compensated Plaintiffs for the full injury claimed (Ex. 1, Settlement Agreement, p.2).

The Settlement Agreement separately defines "Releasees" and separately defines the term "Settlement." At paragraph A(5), it states: "Settlement shall mean that the settlement reached between Plaintiffs and Releasees, regarding any injury to Plaintiffs and any damages claimed." (Ex. 1, Settlement Agreement, p. 2). This language of defining settlement does not limit the amount received to just the damages attributed to the Releases but in fact clearly states the settlement encompasses any injury to Plaintiffs and any damages claimed." Additionally, while the release clauses in the contract address releasing only CHMO and its insurance company, the release is just an agreement by the Plaintiff not to sue those entities again on the same claims, facts and issues in the case. The fundamental purpose of having both a settlement clause and a release clause in a settlement agreement is because a settlement and a release are in fact two separate and distinct contract clauses under the law addressing different legal concerns. Because the "Settlement" definition is separate from the "Releaseee" definition and in fact asserts to compensate the Plaintiffs for all damages and all injuries regardless of the party defendants, the need for continuing litigation is over. The plain language of the definition of "Settlement", which was drafted and executed by all the parties with attorney representation, makes it is difficult to argue that the $225,000.00 somehow not intended to compensate Plaintiffs for the all damages and all injuries claimed. (Ex. 1, Settlement Agreement, p. 2).

This legal distinction between a release and an intention of the parties to settle for the entire injury is set forth clearly in the case of *Kirkpatrick v. Chrysler Corp.*, 920 P.2d 122 (Okla. 1996). In *Kirkpatrick,* the Oklahoma Supreme Court held that when a settlement is entered without actual adjudication of the merits, a satisfaction of that judgment will not bar a subsequent suit against other potential tortfeasors who might be liable for the same harm unless the other potential tortfeasors are named or otherwise specifically identified in the satisfaction of judgment *"or unless it is somehow otherwise shown the parties to the compromise and settlement intended the amount settled for to represent full compensation for all injuries." Id.* at 133 (*emphasis added*). The Court in *Kirkpatrick* clearly contemplated a situation in which a settlement could intend to compensate for the full injury sustained by the Plaintiff and that such a payment arrangement to settle for all of Plaintiff's damages can and should preclude the Plaintiff from further litigation against non-settling tortfeasors. This legal construct is well established in other jurisdictions as well as Oklahoma. *In re Doctors Hosp. of Hyde Park, Inc.*, 494 B.R.344, 367 (Bankr. N. Dist. Ill. 2013) (*citation omitted*), the Court found that an unconditional release of one of several joint tortfeasors may release all, even where the latter were not a party to the release or specifically identified in the release.

The *Kirkpatrick* Court, in giving deference to the Oklahoma Contribution Act, held:

> Recently, we interpreted 12 O.S.1991, § 832(H)(1), a part of the Uniform Contribution Among Tortfeasors Act (UCATA), in regard to when a release given to one tortfeasor will be considered to act as a discharge of other potential tortfeasors liable to an injured party for the same injury or wrongful death. We held in *Moss v. City of Oklahoma City*, 897 P.2d 280 (Okla.1995), that such a release will discharge other potential tortfeasors only if they are named or otherwise specifically identified in the release as

persons to be discharged. We believe the same general rule should be applied where satisfaction of an agreed or consent judgment is involved, i.e where there is no actual adjudication on the merits of the issue of the amount of damages. Like the Maryland Court of Appeals in Welsh, however, *we realize the parties to the settlement may intend that the amount of the settlement embodied in a consent or agreed judgment is to represent full compensation for a plaintiff's injuries. In such a situation, we see no reason why a plaintiff should not be precluded from further litigation against other potential tortfeasors.*

*Kirkpatrick v. Chrysler Corp.,* 920 P.2d 122, 133 (Okla. 1996)(*footnotes omitted; emphasis added*).

The language that defines "Settlement" in the Settlement Agreement with CHMO clearly states it covers any injury to the Plaintiffs and any damages claimed. As a result the Plaintiff should be barred under Oklahoma law form proceeding with litigation against the remaining Defendants in this case who are joint and/or concurrent tortfeasors who would be jointly and severally liable for the Section 1983 claims. Because the settlement executed by the Plaintiffs with CHMO does not restrict or limit or define what portion of damages it is to cover other than stating it covers "all injuries", this case should be precluded from proceeding to trial prevent a double recovery.

While Plaintiffs will definitely argue that this definition of "Settlement" in the Settlement Agreement should be read broadly and interpreted as a whole to mean that the settlement was not intended to compensate Plaintiffs for all injuries, such an interpretation of the intent of the parties would not consistent with the required provision of the Settlement Agreement that the parties attest the agreement was entered into in good

faith.[1]  For CHMO to enter into a settlement that was not for the full damages caused to the Plaintiff would mean that CHMO entered into this agreement in bad faith rather than good faith since CHMO had a contractual duty to indemnify the BOCC and Sheriff Whetsel on any claims arising from their provision of medical care to pre-trial detainees. (Ex. 2, CHMO Contract, pp.15-16).   Additionally, this document was turned over in discovery, was subject of deposition testimony questions asked by the Plaintiff's counsel, and the content of the CHMO contract was known to the Plaintiffs at the time this settlement was executed. (Ex. 3, Depo. of CHMO Exec. Dr. L. Wolk, p.31 ll. 15-25; p. 32, l. 1-12).   It is also beyond dispute that the remaining Section 1983 claim for the wrongful death of Charles Holdstock predicated on his constitutional right to access to reasonable medical care. To now interpret the Settlement Agreement executed in 20011 on the eve of trial to mean that it did not include all of Plaintiff's damages would be tantamount to an outright admission by both parties that in spite of knowledge of the indemnification clause requiring CHMO to pay damages incurred on medical claims for and on behalf of the BOCC and Sheriff Whetsel, all parties entered this settlement in bad faith and purposefully breached and/or induced another to breach of the CHMO contract and in fact, purposefully caused the litigation to continue and the County to incur thousands of dollars in expenses in continued efforts to defend the litigation.[2]

---

[1] If intention of this clause is in dispute, the Court could conduct a hearing to determine if the settlement document was in fact executed in good faith.

[2] One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive and burdensome, is subject to liability to the other for the pecuniary loss resulting to him. Restatement (Second) of Torts (1979).   Oklahoma recognized a cause of action against an interferor when wrongful acts are aimed at hindering or otherwise rendering plaintiff's

Further, it should be pointed out that at the time the settlement was reached, the BOCC and Sheriff Whetsel had been dismissed out on summary judgment and although an appeal was contemplated, if the settlement was intended to only include and release the claims against CHMO, these parties should have been notified of this fact and given the opportunity to settle before attorneys fees and costs of the appeal were incurred. Also, if the Settlement Agreement was intended to only cover part of the injury sustained by the Plaintiffs, one would assume the document's terms would or should have made that clear and precise so as to provide clarity as to what injury was compensated for and what injury remained uncompensated for. Instead, the Settlement Agreement simply states that it is for claims and all injuries and releases just CHMO and their insurance company.

In order to avoid the absurd result that the settling parties negotiated and executed the Settlement Agreement with actual knowledge that doing so would breach or induce a breach of contract, actions that would in fact constitute bad faith, the most likely and least offensive interpretation of intent of the parties to the Settlement Agreement executed in August of 2001 was that the payment of $225,000.00 was to compensate the Plaintiffs for all injuries and all damages claimed in the case. This interpretation makes the most sense since the plain language of the definition of "Settlement" in the agreement states it is for all injures and all claims.

Defendants therefore argue that the Court apply the precedent set forth in *Kirkpatrick* and dismiss the proceeds so as to disallow the Plaintiffs from obtaining double recovery

---

performance more costly or burdensome in a contract between plaintiff and a third party. *See Mac Adjustment, Inc. v. Prop. Loss Research Bureau*, 1979 OK 41, 595 P.2d 427; *Wilspec Technologies, Inc. v. DunAn Holding Group, Co., Ltd.*, 204 P.3d 69, 72 -73 (Okla. 2009); *see also* Okla. Stat. tit. 23 §9.1.

13

as prohibited by both state and federal law as well as Oklahoma statute, Okla. Stat. Tit. 12 §832(H) (2001).

**PROPOSITION III:**      **DISMISSAL OF ALL CLAIMS AGAINST THE DEFENDANTS BOCC AND SHERIFF WHETSEL IS QUIRED TO PREVENT DOUBLE RECOVERY DUE TO THE FACT CHMO WAS THE EQUIVALENT STATE ACTOR FOR THE PURPOSES OF ALL SECTION 1983 CLAIMS**

In this case the only remaining claim to litigate is the Section 1983 claim against the BOCC and Sheriff Whetsel based upon the establishment of a custom or policy that was deliberately indifferent to Charles Holdstock's constitutional right to access reasonable medical care for his serious medical conditions. [Doc.# 133, Appellate Court Order]. It is well settled that a medical healthcare provider contracted by a municipality to provide and make medical healthcare decisions for inmates is for all relevant purposes, a state actor of that municipality. When a doctor or medical provider is authorized and obliged to treat prison inmates, he does so "clothed with the authority of state law" and is "a person who may fairly be said to be a state actor." *See Lugar v. Edmondson Oil Co.,* 457 U.S., 922, 937, 102 S.Ct., 2744, 2754 (1982); *United States v. Classic,* 313 U.S., 326,61 S.Ct., 1031, 1043; *Buckner v. Toro,* 116 F.3d 450, 452 (11th Cir.1997) (when a private entity contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state and in so doing, it becomes the functional equivalent of the municipality); *see also See also Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1216 (10th Cir. 2003) (recognizing the expansion of municipal liability to private entities).

14

This is because simply contracting out prison medical care does not relieve the state of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *West v. Atkins,* 487 U.S. 42, 56, 108 S.Ct. 2250 (1988).  "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *West,* 487 U.S. at 53 (*citing Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285 (1976)).

In *West,* the Supreme Court held that a physician who was under contract to provide medical services to inmates at a state prison was a state actor for purposes of § 1983. *Id.* at 57.  Because of the physician's "function within the state system," and not "the precise terms of his employment ... his actions [could] fairly be attributable to the State." *Id.* at 55–56. The fact that the State contracted out prison medical care did not "relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it [did] not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *Id.* at 56. "The State bore an affirmative obligation to provide adequate medical care to [its prisoners]; the State delegated that function to [the physician] Atkins; and [the physician] voluntarily assumed that obligation by contract." *Id.* As such, "[t]he Eighth Amendment imposes on the government the affirmative duty to provide adequate medical care to incarcerated persons." *Fleming v. Uphoff,* 2000 WL 374295, at *2 (10th Cir. April 12, 2000). [3]

---

[3] "The constitutional protection against deliberate indifference to a prisoner's serious medical needs, ... applies to pretrial detainees through the due process clause of the Fourteenth Amendment ." *Barrie v.*

15

If the state delegates to a private party a function that traditionally exclusively reserved to the State, then the private party is necessarily a state actor. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1456 (10th Cir. 1995) *citing Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 2085-87, 114 L.Ed.2d 660 (1991).; See also *Price v. Suarez,* 2011 WL 635225, *3 -4 (D. Utah Feb. 11, 2011)( jail contracted exclusive right to provide and operate food services for inmates to contractor who voluntarily assumed the obligation and was thus a state actor acting under color of state law for the purposes of Section 1983); *Ramos v. Lamm,* 639 F.2d 559, 570–71 (10th Cir.1980).

This same legal theory applies when the governmental entity is a municipality or county who delegates its constitutional duty to provide medical care to pre-trial detainees. *O'Bryan v. Sedgwick County* 2000 WL 882516, *6 -8 (D. Kan. June 12, 2000). In *O'Bryan,* the federal court rejected the County's argument that the decisions of its contracted medical care provider did not and could not bind the County in Section 1983 litigation.

> The defendant further argues that PMA is an independent contractor, and therefore decisions made on its behalf cannot bind the county. The court is not persuaded by this argument. The defendant is obligated to provide medical services to those in its custody. Therefore, it cannot escape liability by contracting with an outside entity to provide such services.

*Id.* at * 8. The Court in *O'Bryan* also stated that:

---

*Grand County,* 119 F.3d 862, 867 (10th Cir.1997). An "analysis under the deliberate indifference standard does not differ whether it is applied to pretrial detainees under the fourteenth amendment .... ' *Nelson v. ARA Food Serv.,* 1995 WL 303990, at *3 n. 9 (E.D.Pa. May 18, 1995) (*citation omitted*).

> [t]he defendant argues that under Kansas law, the sheriff controls the policies and practices of the jail. However, the defendant [County], as the holder of the purse strings, is the entity that contracted with PMA to provide medical care to those detained in the jail. Pursuant to that agreement, all medical decisions were and are made by PMA physicians and employees. Neither the defendant nor the sheriff review the decisions of the Medical Director or his staff. Therefore, the court finds that the Medical Director has been delegated the final policymaking authority with regard to the inmates' medical needs.

*Id.* at * 8. In a similar case, the Eleventh Circuit found that a county had delegated final policymaking authority for medical decisions to the physician's assistant at a prison. *Mandel v. Doe*, 888 F.2d 783 (11th Cir. 1989). In *Mandel,* the county entered into a "Memorandum of Understanding" with its health department to provide medical services to those detained at the county prison. *Id.* at 785.  Under the arrangement, a physician's assistant was to be supervised by a doctor, but a custom and practice developed wherein the assistant's decisions were not subject to supervision or review. *Id.* at 794. Because the assistant's decisions as to inmate medical care were effectively final, the court determined that the assistant's decisions could be the basis for county liability. *Id.* Delegation in *Mandel* was premised upon the absence of any review of the delegatee's decisions. "When review is missing, the decisions of the delegatee become official policy and may bind the delegating municipality." *Mitran v. County of Dupage,* 946 F.2d 897, 1991 WL 209656 at *4 (7th Cir. 1991). (finding no delegation because the contract provided for review of the doctor's decisions). It is for the trial judge to identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue. *Jett v. Dallas Independent School Dist.*, 491

U.S. 701, 737-738, 109 S.Ct. 2702, 2724 (U.S.Tex.,1989) (*citations omitted*). Only after those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether *their* decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur or by acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity. *Id. (citations omitted)*

Like in *O'Bryan* and *Mandel,* this Court should find that Oklahoma County contracted and delegated policy and decision making authority with regard to medical care and treatment to its third party contract provider, CHMO, without retaining any power for review. (See Ex. 2, CHMO Contract). In fact all medical decisions relating to dental, elective medical care, hospitalization were to be determined by the CHMO Chief Medical Officer. Ex. 2, CHMO Contract, p. 3);(Ex. 3, Depo. of CHMO Exec. Dr. L. Wolk, p.30 ll. 4-16). CHMO was also responsible for hiring all medical professionals providing services at the jail and for providing policies, procedures and protocols regarding healthcare at the Oklahoma County Jail. (Ex. 2, CHMO Contract; Ex. 3, Depo. of CHMO Exec. Dr. L. Wolk, p.130 ll. 20-22; 33, ll. 23-25, p. 34, ll. 1-7). The County's contract with CHMO to provide and make all medical healthcare decisions therefore clearly delegated the County's policy making authority to CHMO. (Ex. 2, CHMO Contract). This included setting and enforcing custom and policy with regard to the delivery of medical healthcare. Therefore, to the extend the Plaintiffs are claiming a Section 1983 violation based upon a custom and policy about the manner and method of providing healthcare to inmates, such custom and policy making authority was by

contract and action, fully delegated to CHMO.   As a result, CHMO became the state actor for the purposes of Section 1983 litigation and bound the County with regard to liability for medical care custom and policy at the Oklahoma County Detention Center.[4] It logically follows that CHMO, having the power to bind the County with regard to liability, would likewise bind the county with regard to settlement of claims arising from the performance of the delegated constitutional duties regarding the medical care of Charles Holdstock.

Because CHMO was Oklahoma County's delegated actor with regard to the provision of medical care and made all medical decisions without supervision or review by the County or Sheriff, these Defendants cannot be held liable again for the same injury to Charles Holdstock that was subject to the CHMO settlement of all of Plaintiffs damages. The concept that the contractual medical provider is the *de facto* state actor for the purposes of medical care is in keeping with the line of cases that have found that a correctional officer is generally entitled to rely upon the advice and course of treatment prescribed by medical personnel. *Cf. Taylor v. Vicky,* 337 Fed. Appx. 412, at *3 (5th Cir.2009) (plaintiff failed to allege facts sufficient to prove deliberate indifference where the defendant correctional officers knew that plaintiff's injury had been reported and

---

[4] It should be noted that there is no concept of respondeat superior in Section 1983 litigation.  See *Fresquez v. Minks.* 2013 WL 452292, *8 (Dist.Colo.Feb. 6,2013); "Neither a municipality nor an entity such as CHM, which is the functional equivalent of a municipality (see Section (C)(2) *infra* ), can be liable under § 1983 without a predicate constitutional harm inflicted by its officer" *Id. Jiron v. City of Lakewood,* 392 F.3d 410, 419 (10th Cir.2004) ( *citing City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)); *see also Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1317–18 (10th Cir.2002) ("We will not hold a municipality liable [for constitutional violations] when there was no underlying constitutional violation by any of its officers"). In this caser, if there is no custom or policy of CHMO that violated the constitutional rights of Charles Holdstock, then the County cannot be found liable under Section 1983 for custom and policies relating to medical care decisions.

the defendant correctional officers knew that plaintiff's injury had been reported and assumed that the prison medical staff would manage the inmate's care); *Wall v. Dauphin County*, 167 Fed. Appx. 309, at *2 (3rd Cir.2006) (noting that jail administrators "are generally entitled to rely on the judgment of medical professionals because the question of whether a particular medical treatment is warranted is a 'classic example of a matter for medical judgment.' "). *Key v. McLaughlin*, 2011 WL 4369115, *8 -9 (Dist. Colo. Aug. 3,2011).

Simply labeling CHMO as the only Releasee in the contract and attempting to contractually sever CHMO from the County for the purposes of settlement is simply not legally permissible according to the case law authority set forth above that clearly demonstrates the County is not allowed to sever or delegate its constitutional duties to a private contractor to provide medical care. For the purposes of liability, CHMO and the County are essentially the same entity and therefore settlement by CHMO is a *de facto* settlement with the County. The continuation of this litigation in light of the CHMO settlement would  therefore not only be burdensome and oppressive to the remaining Defendants, but would in fact constitute double recovery for the same injury since full settlement was derived from the actual state actor in charge of medical policy at the Oklahoma County Detention Center.

**PROPOSITION IV:     ALTERNATIVELY,     THE     DEFENDANTS     ARE ENTITLED TO SETOFF OR CREDIT OF THE $225,000.00 SETTLEMENT FROM CHMO**

Should the court find that the settlement with CHMO was not intended to be a settlement for the full and entire injury claimed by the Plaintiffs, Defendants are still entitled to contribution or setoff in the amount of $225,000.00. Section 1983 claimants are not entitled to double recovery. In federal § 1983 cases as well as under the law of most states, "[i]t is axiomatic that where several independent actors concurrently or consecutively produce a single, indivisible injury, each actor will be held jointly and severally liable for the entire injury." *Watts v. Laurent,* 774 F.2d 168, 179 (7th Cir.1985)(applying the joint and several liability principle in a § 1983 suit); *Fox ex rel. Fox v. Barnes,* 2013 WL 2111816, *2 (N.D. Ill. May 15, 2013); *Quezada v. County of Bernalillo,* 944 F.2d 710 (10th Cir.1991). Therefore, it is clear that tortfeasors who are sued under Section 1983 for a civil rights violation resulting in a single indivisible injury are in fact jointly and severally liable. If the Court finds that CHMO is a separate entity from Oklahoma County and the Sheriff for the purposes of this lawsuit, then they would be jointly and severally liable with CHMO under Plaintiffs' Section 1983 claims.

The doctrine against double recovery has actually been established by statute and case law in Oklahoma. See Okla. Stat. Tit. 12 §832(H) (2001); *Pain v. Sims,* 283 P.3d 343, 345 -346 (Okla. Civ. App. 2012). The Oklahoma Contribution Among Joint Tortfeasors Act concerns contribution, not the apportionment of liability. *Price v. Southwestern Bell Telephone Co.,* 1991 OK 50, ¶ 15, 812 P.2d 1355, 1359. When the liability of negligent co-defendants is joint and several, the Act codifies the rule against double recovery and specifies that the reduction is to be either the amount paid or the

21

amount set forth in the settlement document, whichever is greater. *Id.*   Again, the Act does not alter the joint and several liability status of the defendants. *National Union Fire Ins. Co. v. A.A.R. Western Skyways, Inc.,* 1989 OK 157, 784 P.2d 52. The fact that a negligent co-defendant settled does not change the liability of the remaining defendant. *Morava v. Central Oklahoma Medical Group, Inc.,*    26 P.3d 779, 781 - 782 (Okla.Civ.App. 2001). The application of §832 in cases where a joint tortfeasor has settled with a plaintiff is to reduce the financial exposure of the non-settling defendant by the amount of the settlement, but not to take away any of the plaintiff's elements of recovery the plaintiff *Id.* at 784.

Title 42 U.S.C. § 1988 authorizes courts to look to the common law of the States where this is "necessary to furnish suitable remedies" under § 1983. *Carey v. Piphus,* 435 U.S. 247, 258, 98 S.Ct. 1042, 1049 (U.S.Ill. 1978).  Therefore, this Court may properly look to and rely upon Okla. Stat. tit. 12 §832 in determining the right to setoff or contribution BOCC and Sheriff Whetsel are entitled to receive in light of Plaintiff's $225,000.00 settlement with CHMO.  However, the Supreme Court has noted that the state common-law tort rules of damages will not always provide a complete solution to the damages issue in every § 1983 case and courts may have to adapt such rules as required to reach the appropriate result. *Carey v. Piphus,* 435 U.S. at 258, 98 S.Ct. at 1049.

Title 12, Oklahoma Statutes, Section 832(A) codified the doctrine against double recovery and gives the right of contribution to persons jointly and severally liable in tort

for the same injury.   Section 832(H) is essentially a direct codification of § 4 of the

Uniform Contribution Among Tortfeasors Act of 1955, 12 U.L.A. 98 (1955 revised act).

The purpose of the Uniform Act is to provide proportionate allocation of the burden

among multiple tortfeasors. *See Rio Grande Gas Co. v. Stahmann Farms, Inc.,* 80 N.M.

432, 457 P.2d 364, 366 (1969); *see also* 12 U.L.A. 59. Subsection 832(H)(1) of the

Oklahoma Contribution Among Tortfeasors Act provides:

> H. When a release, covenant not to sue, or a similar agreement is given in
> good faith to one of two or more persons liable in tort for the same injury or
> the same wrongful death:
> 1. It does not discharge any other tort-feasor from liability for the injury or
> wrongful death unless the other tort-feasor is specifically named; but it
> reduces the claim against others to the extent of any amount stipulated by
> the release or covenant, or the amount of the consideration paid for it,
> whichever is the greater.

Essentially three conditions must be satisfied before § 832(H) may apply.   First, there

must be a release or covenant not to sue given to one of two or more persons. Second, the

multiple parties must be liable in tort. Third, they must be liable for the same injury. *In*

*re Jones,* 804 F.2d 1133, 1139 -1140 (10th Cir. 1986).   The Uniform Act does not require

that multiple tortfeasors be liable under the same theories of recovery. *See Cartel Capital*

*Corp. v. Fireco of New Jersey,* 81 N.J. 548, 410 A.2d 674, 684 (1980); *Sanchez v. City of*

*Espanola,* 94 N.M. 676, 615 P.2d 993, 995 (1980).   This is also not a requirement of §

832(H). To the contrary, Section 832(H) itself does not require that the parties act in

concert in order to be liable as multiple tortfeasors. *In re Jones,* 804 F.2d at 1139 -1140.

Section 832(H) merely requires that the multiple tortfeasors cause or contribute to the

same injury sustained by the plaintiff. *Id.* Without question, all of the necessary elements

are met in this case since Section 1983 litigation is akin to a tort action and under Plaintiff's claims, CHMO, BOCC and Sheriff Whetsel are all alleged to have acted to contribute to the same injury or wrongful death of Charles Holdstock. See [Complaint, Doc.#1]; *Stringer v. Dilger*, 313 F.2d at 541.

Section 832(H) of the Oklahoma Contribution Act was interpreted by the Oklahoma Court of Civil Appeals in *Cleere v. United Parcel Service, Inc.,* 1983 OK CIV APP 29, 669 P.2d 785. There, the Court held that "it is the function of the trial court to make as a reduction from the jury verdict rendered the compensation already received by plaintiff from absent tortfeasors because of settlement." *Id.* However, the Oklahoma Supreme Court's decision in *Nichols v. Mid- Continent Pipe Line Co.,* 1996 OK 118, 933 P.2d 272 took this simple judicial function codified in §832(H) a step further by holding that in order for a non-settling defendant to pursue a § 832(H) credit, the non-settling defendant is required to press and submit the settling defendant's liability to the jury during trial and have the jury assess the settling defendant's "ghost tortfeasor" liability. *Id* at 280. The Court further explained that "A judgment debtor's § 832(H) claim to settlement proceeds' credit is conditioned upon the settling party's liability in tort for the same injury." *Id.*

The *Nichols* rule has since been recognized in *Capshaw v. Gulf Ins. Co.,* 2005 OK 5, 107 P.3d 595, in which the Oklahoma Supreme Court, citing *Nichols,* declared that a pretrial settlement could not be used as a credit against the plaintiff's eventual recovery against remaining, non-settling defendants where the settling defendant's liability was not submitted to the jury. *Id. at* ¶ 13, 107 P.3d at 603. The Court explained this was because

the non-settling defendant has the "power to preserve its claim for this credit by either a pre-submission exception to the blank verdict form or a post-submission exception when the verdict was returned." *Id. See also Pain v. Sims,* 283 P.3d at 345 -346.

In this case, in order to preserve and have the right to contribution pursuant to 12 O.S. §832(H), the issue of CHMO's liability must be presented to the jury to assess CHMO's liability. While there is no Oklahoma Uniform Jury Instruction applicable on this matter, the case law developed on this issue is of assistance in crafting the appropriate kind of jury instruction that will preserve and allow Defendants BOCC and Sheriff Whetsel their right to contribution and setoff of the CHMO settlement with Plaintiff in the amount of $225,000.00. In *Nichols,* the Court held that the jury's opportunity to allocate fault to a settling defendant is critical to a non-settling defendant's demand for a settlement proceeds' credit. *Nichols,* 1996 OK 118, 933 P.2d at 280. As stated in *Nichols,* the non-settling defendant lost its opportunity to apply a § 832(H) credit when it failed to:

> interpose either (1) a pre-submission objection to the trial court's form of verdict on the nuisance claim (which excluded [settling defendant] ), or (2) a post-submission objection— *before* the jury's discharge—when the verdict was brought into the courtroom but before its acceptance by the trial judge. Either procedural vehicle was available to secure the jury's assessment of [settling defendant's] non-party liability....

*Nichols,* 1996 OK 118, 933 P.2d at 280. In *Capshaw v. Gulf Ins. Co.,* 2005 OK 5, 107 P.3d 595 the Oklahoma Supreme Court suggested that the defendant should have pressed for the jury to find that the settling defendant was partially liable by objecting to

25

the trial court's form of the verdict that excluded the settling defendant from liability. *Id.* at 555. In *Pain v. Sims*, the Court pointed out that there were no instructions offered to the jury that concerned the apportionment of negligence of the settling defendant so no contribution could be claimed. *Pain v. Sims* 283 P.3d at 344 -346.

Defendants propose and urge the Court to allow the jury be instructed on ghost tort feasor liability, the CHMO's name appear on the verdict forms, and that the jury be given the opportunity to consider and even apportion liability to CHMO as a ghost tortfeasor through special interrogatories in order to adequately ensure there is no duplication of recovery for the same injury. The proposed Jury Instructions of the Defendants have been filed with the court and the Defendants strongly urge the Court to approve such instructions that would best accomplish the goal of preserving the Defendants' right to setoff and/or contribution. Although liability is generally not apportioned in Section 1983 cases, as stated before, the federal courts may be required to adapt the application of the state law in cases where needed to accomplish the correct result with regard to fashioning damages and apportionment of damages by the jury in this case should be required. *Carey v. Piphus,* 435 U.S. at 258, 98 S.Ct. at 1049 (common-law tort rules of damages will not always provide a complete solution to the damages issue in every § 1983 case).

**PROPOSITION V:** FOR THE PURPOSES OF LIABILITY AND ASSESSMENT OF DAMAGES, THE DEFENDANTS WHETSEL AND BOCC SHOULD BE TREATED AS ONE ENTITY FOR THE PURPOSES OF LIABILITY AND DAMAGES

For the purposes of Civil Rights Litigation, when a suit is brought against an elected County Official, such as Sheriff John Whetsel, it can be brought in his individual capacity, his official capacity as Sheriff, or both. The law treats lawsuits against a County official in his or her official capacity as the equivalent of a suit against the County itself. Generally, governmental sub-units are not separate suable entities that may be sued. *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) ("The 'City of Denver Police Department' is not a separate suable entity.") *See also* Fed. R. of Civ. P. 17(B). Additionally, there is "no Oklahoma authority to justify suing a sheriff's department under municipal liability theory." *Reed v Hamby*, 124 F.3d 217, 1997 WL 537909, * 6 (10th Cir. Sept 2, 1997). Therefore, for the purpose of this trial the Board of Oklahoma County Commissioners and Sheriff John Whetsel, in his official capacity, should be consolidated and treated as one legal entity for the purposes of liability rather than as two separate and distinct legal entities for the purposes of establishing municipal liability. *See Lopez v. LeMaster,* 172 F.3d 756, 762 (10th Cir.1999);*Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs,* 151 F.3d 1313, 1316 n. 2 (10th Cir.1998); *Meade v. Grubbs*, 841 F.2d 1512, 1517 (10th Cir. 1988); *Layton v. Board of County Com'rs of Oklahoma County,* 512 Fed. Appx. 861, 867-68 (10th Cir. 2013).

27

Defendants respectfully request that Sheriff Whetsel, in his official capacity, be removed from all jury instructions or separated out as a co-defendant that is separate from the Board of Oklahoma County Commissioners for the reasons set forth above.  Such elimination of the Sheriff from the title of the pleadings and the jury instructions will eliminate any confusion and/or the risk of double recovery in this case.  In the event the court denies this request, Defendants request to reserve the right to amend and/or supplement its jury instructions in accordance with the Court's ruling on this issue.

## CONCLUSION

WHEREFORE, the Defendants Board of County Commissioners of Oklahoma County and Sheriff John Whetsel, in his official capacity, respectfully pray that this Honorable Court will consider and grant relief in all respects for the reasons set forth herein as may be just and proper.

Respectfully submitted,

BY:   /s/ Lisa Erickson Endres
LISA ERICKSON ENDRES, OBA #16647
AARON ETHERINGTON, OBA #18,259
ASSISTANT DISTRICT ATTORNEYS
320 Robert S. Kerr, Suite 500
Oklahoma City, OK 73102
Phone: (405) 713-1600
Fax: (405) 713-1749

## CERTIFICATE OF MAILING

This is to certify that a true and correct copy of the above and foregoing document was served on the following person by electronically transmitting the document to the Clerk of the Court for the Western District of Oklahoma using the ECF system for filing on the date of filing:

E.W. Keller
Keller, Keller, & Dalton
119 N. Robinson, Ste. 825
Oklahoma City, OK 73102
*Attorney for Plaintiffs*

/s/Lisa Erickson Endres

29